# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STORMY SMITH,<br><br>Plaintiff,<br><br>v.<br><br>GREYHOUND LINES, INC., a Delaware corporation, CONCENTRA OCCUPATIONAL MED CTRS – CA, an unknown business entity, and Does 1 through 20, inclusive,<br><br>Defendants. | 1:18-cv-01354-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER RE PLAINTIFF'S MOTION FOR REMAND (Doc. 5) |

## I. INTRODUCTION

This case concerns claims brought by Stormy Smith against Greyhound Lines, Inc.

("Greyhound"), Occupational Health Centers of California, a Medical Corporation ("OHCC"),[1] and

Does 1 through 20.  This case was originally filed in Fresno County Superior Court on August 28, 2018.

Doc. 1, Ex. A.  On October 1, 2018, Defendant Greyhound filed a notice of removal to this Court.  Doc

1.  On October 19, 2018, Plaintiff filed the instant motion to remand.  Doc. 5.  Greyhound filed its

opposition on November 13, 2018.  Doc. 8.  Plaintiff filed a reply on November 19, 2018.  Doc. 16.  For

the following reasons, Plaintiff's motion to remand is GRANTED.

---

[1] Plaintiff's Complaint names "Concentra Occupational Med Ctrs – CA" as a defendant.  Doc. 1, Ex. A.  Defendant OHCC received notice of the lawsuit and filed an answer in the United States District Court on October 22, 2018, stating on information and belief "Concentra Occupational Med Ctrs – CA" was not the correct defendant, and that OHCC was the proper defendant.  Docs. 6 ¶ 3, 11 at 2.  This Order assumes all references in the complaint, pleadings, and briefing to "Concentra Occupational Med Ctrs – CA" or "Concentra" are properly made to OHCC.

## II. <u>BACKGROUND</u>

Plaintiff Stormy Smith is a resident and citizen of California.  Doc. 1 ¶ 18, Ex. A ¶ 1.  Defendant Greyhound is a Delaware corporation with its principal place of business in Cincinnati, Ohio.  Doc. 1 ¶ 19.  Defendant OHCC is medical corporation with its principal place of business in the county of Fresno, and the state of California.  Doc. 6 ¶ 3.

Plaintiff began working for Defendant Greyhound as a bus operator on or about June 2, 2013.  Doc. 1, Ex. A ¶ 12.  Plaintiff alleges in or around July 2017, she requested paid time off work using her accrued sick leave.  *Id.*  Plaintiff claims that she was ready to return to work in September 2017, but Greyhound required her to undergo a physical examination conducted by OHCC.  *Id. ¶13.*  OHCC allegedly cleared Plaintiff to return to work.  *Id.*  Plaintiff pleads that, subsequently, Greyhound required Plaintiff to sign a release for her complete medical history from her regular health care provider before she returned to work.  *Id*. ¶ 14.  Plaintiff refused to sign the release, and OHCC allegedly revoked its clearance, preventing Plaintiff from returning to work.  *Id.*  Plaintiff pleads that Greyhound refuses to permit her to return to work because she took sick leave, complained about unsafe working conditions, complained about discrimination, and because Greyhound perceives Plaintiff as disabled.  *Id.* ¶ 16.  Plaintiff alleges OHCC is aiding and abetting the discrimination and retaliation by insisting Plaintiff release her medical records.  *Id.*  On or about August 28, 2018, Plaintiff noticed the California Labor and Workforce Development Agency ("LWDA") regarding Greyhound's alleged violations of the Labor Code, and has not received a response as of the filing of the Complaint in this case.  *Id.* ¶ 17.  Plaintiff also filed a charge of discrimination with the Department of Fair Employment and Housing ("DFEH") against Greyhound and OHCC, and received a "right to sue letter" in return.  *Id.*

Greyhound asserts that Plaintiff's employment was governed by a collective bargaining agreement ("CBA") entered into by and between International Brotherhood of Teamsters Local No. 315 and First Transit.  Doc. 9 ¶ 3.  The CBA was effective from April 1, 2014 to March 31, 2018 and requires employees seeking to return to duty after leave of 30 days or longer to pass a physical

examination. *Id.* Article G-4 provides terms governing leaves of absence. *Id.*, Ex. A at 5-7. Section G-4(a) of the CBA states "[e]mployees on sick leave must provide medical documentation concerning their condition every 90 days." *Id.* at 5. Section G-4(g) states that "[e]mployees returning to duty status after leave of 30 days or longer may be required to pass a physical examination and drug test at Company expense." *Id.* at. 7. Article G-8 sets forth a mandatory grievance procedure. *Id*. at 9-11. Plaintiff does not dispute that aspects of her employment were subject to the CBA.

On August 28, 2018, Plaintiff filed this action in Fresno County Superior Court, asserting six causes of action: (1) retaliation in violation of California Labor Code section 246.5; (2) retaliation in violation of Labor Code sections 6310-6311; (3) discrimination and harassment based on perceived disability in violation of California Government Code section 12940; (4) retaliation in violation of California Government Code section 12940(h); (5) impermissible inquiry regarding medical condition in violation of California Government Code sections 12940(e)(1) and (f)(1); and (6) aiding and abetting retaliation in violation of California Government Code section 12940(1). Doc. 1, Ex. A.

On October 1, 2018, Greyhound removed to this Court, claiming federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 1332(a). On November 15, 2018, OHCC filed its consent to removal. Doc. 11. Plaintiff objected to OHCC's consent to removal. Doc. 12. Pursuant to Local Rule 230(g), the Court determined that this matter was suitable for decision on the papers and took it under submission on November 20, 2018. Doc. 17.

### III. <u>LEGAL STANDARD</u>

A defendant may remove any civil action from state court to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C. § 1447(c). Federal courts are courts of limited jurisdiction and can adjudicate only those cases authorized by the United States Constitution and Congress. Generally, those cases involve diversity of citizenship, a federal question, or where the

United States is a party.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 8 (1983); 28 U.S.C. § 1442.  Lack of subject matter jurisdiction is never waived and may be raised by the Court *sua sponte*. Fed. R. Civ. P. 12(h)(3); *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

District courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To invoke federal question jurisdiction, a complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008).  In determining the presence or absence of federal question jurisdiction in removal cases, the "well-pleaded complaint rule" applies, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  The well-pleaded complaint rule "makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law."  *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000).  Thus, it is "settled law that a case may not be removed to federal court on the basis of a federal defense, including a defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 14 (1983).

"There does exist, however, a corollary to the well-pleaded complaint rule, known as the 'complete preemption' doctrine.  The Supreme Court has concluded that the preemptive force of some statutes is so strong that they 'completely preempt' an area of state law."  *Balcorta*, 208 F.3d at 1107 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).  "In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and

therefore arises under federal law." *Balcorta*, 208 F.3d at 1107 (citing *Franchise Tax Bd. of Cal.*, 463 U.S. at 24).

Additionally, under 28 U.S.C. § 1332, the Court has jurisdiction over civil actions where there is complete diversity of citizenship and the amount in controversy exceeds $75,000. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) ("Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants.").

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore–Thomas v. Alaska Airline, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). The presumption against removal means that "the defendant always has the burden of establishing that removal is proper." *Id.* The district court must remand any case previously removed from a state court "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

## IV. DISCUSSION

### A. UNANIMOUS JOINDER TO REMOVAL

At threshold, Plaintiff argues that Greyhound's removal fails procedurally because OHCC did not join in the petition for removal. 28 U.S.C. § 1446(2)(A) states: "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." This has been referred to as the "rule of unanimity." *See United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002). In other words, "[a]ll defendants must join in a removal petition with the exception of nominal parties." *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-33 (9th Cir. 1986). "The 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently joined parties.'" *United Computer Sys., Inc.*, 298 F.3d at 762 (quoting *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th Cir. 1988)); *see also Destfino v. Reiswig*, 630 F.3d 952, 957 (9th Cir. 2011) (joinder is not required from a co-defendant if service is defective). Failure to obtain the consent or joinder of all properly served defendants in the petition for removal renders the

removal procedurally defective.  *See Emrich*, 846 F.2d at 1193 n. 1.  "Where fewer than all the

defendants have joined in a removal action, the removing party has the burden under section 1446(a) to

explain affirmatively the absence of any co-defendants in the notice for removal."  *Prize Frize, Inc. v.*

*Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute on other grounds as*

*stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

If not all properly served defendants have joined in removal, a "district court may allow the

removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of

judgment."  *Destfino*, 630 F.3d at 957; *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966, 970 (9th

Cir. 2002) ("[A] procedural defect existing at the time of removal but cured prior to entry of judgment

does not warrant reversal and remand of the matter to state court.") (alteration in original and internal

quotation marks omitted).

Plaintiff asserts that at the time of removal "Concentra" had not joined in the petition for

removal, rendering Greyhound's petition defective.  Greyhound counters that at the time of removal that

OHCC had not been served and the Fresno Superior Court had previously rejected Plaintiff's Proof of

Service of Summons on Defendant Concentra as "Defective."  Doc. 10.  Greyhound states that the

Fresno County Superior Court docket for this matter does not identify a valid proof of service for

Defendant "Concentra."  *Id.*  Thus, there was "no other Defendant who had been served to consent to the

removal."  *Id*.  Plaintiff first attempted to serve "Concentra Occupational Med Ctrs – CA" on September

6, 2018, and e-filed the proof of service at 11:18 a.m. the same day.  Doc. 10 ¶ 8 & Ex. C.  This service

was rejected as defective by the Superior Court.  *Id.*  Plaintiff re-served "Concentra Occupational Med

Ctrs – CA" and re-filed the proof of service at 2:34 p.m. on September 6, 2018.  Doc. 15.  While

Greyhound asserts that the Fresno County Superior Court docket for this matter does not identify a valid

proof of service for "Concentra," it appears that the second filing of the proof of service for "Concentra

Occupational Med Ctrs – CA" was accepted and not deemed defective.  *See id.*; Doc. 10 ¶ 8.  It remains

unclear whether this accomplished service of OHCC.  OHCC states that it received notice of the lawsuit

and efforts at service, and thus filed its answer on October 22, 2018. Doc. 11 at 2. OHCC filed its

consent to removal on November 15, 2018, Doc. 11, and Plaintiff objected to OHCC's notice of consent

the next day. Doc. 12.

Greyhound's as-filed removal petition was deficient in its failure to address joinder by all co-

defendants. Greyhound's removal petition only discusses "Concentra Occupational Med Ctrs – CA" in

noting that the entity "appears to not exist as a separate legal entity in California, but rather, appears to

be a subsidiary (or is itself) Concentra Health Services, Inc., which is a Nevada corporation with its

principal place of business in Mechanicsburg, Pennsylvania." Doc. 1, Ex. A ¶¶ 1, 20. Greyhound does

not discuss consent to removal from OHCC, "Concentra," or "Concentra Occupational Med Ctrs – CA,"

nor does Greyhound state what efforts it made to obtain consent from all co-defendants. Greyhound's

removal petition does not discuss the failure to serve properly OHCC, "Concentra," or "Concentra

Occupational Med Ctrs – CA." And Greyhound does not otherwise explain the absence of joinder by

co-defendants.

Nevertheless, any defects in Greyhound's removal petition were cured by OHCC filing its

consent on November 15, 2018, which was less than 30 days after OHCC filed its answer and appeared

in this case. It remains unclear from the record whether Plaintiff had properly served the correct co-

defendant at the time of removal, or at any point thereafter. Plaintiff's briefing does not state whether

OHCC is the correct co-defendant, or if the proof of service in Docket 15 accomplished service of

OHCC. Any prejudice to Plaintiff is minimal, particularly given the Court finds remand proper in this

case. Thus, the Court overrules Plaintiff's objections to OHCC's notice of consent.

**B.      DIVERSITY JURISDICTION**

Greyhound originally removed this case based on diversity jurisdiction, stating on information

and belief that "Concentra Occupational; Med Ctrs – CA" was a non-California citizen. Doc. 1 ¶ 20.

Diversity jurisdiction "requires complete diversity of citizenship." *Morris*, 236 F.3d at 1067. In its

opposition to Plaintiff's motion to remand, Greyhound stated that it was now aware "Concentra

1 Occupational Med Ctrs – CA" was erroneously named and that the correct defendant, OHCC, is a

2 California corporation.  Greyhound conceded complete diversity is lacking and that there is no longer a

3 basis for diversity jurisdiction.  Doc. 8 at 7-8.  The Court assumes without deciding that there is no basis

4 for diversity jurisdiction.  Therefore, the only remaining basis for subject matter jurisdiction would be

5 federal question jurisdiction.

6 **C.       FEDERAL QUESTION JURISDICTION**

7 Section 301 of the Labor Management Relations Act ("Section 301"), codified at 29 U.S.C.

8 § 185(a), states in relevant part:  "Suits for violation of contracts between an employer and a labor

9 organization representing employees in an industry affecting commerce . . . . may be brought in any

10 district court of the United States having jurisdiction of the parties . . . ."

11 The Supreme Court has noted that the LMRA "does more than confer jurisdiction in the federal

12 courts over labor organizations.  It expresses a federal policy that federal courts should enforce these

13 agreements on behalf of or against labor organizations and that industrial peace can be best obtained

14 only in that way." *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957);

15 *see also Local 174, Teamsters of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) ("The dimensions

16 of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the

17 area covered by the statute").  As a result, because "[a]n action arising under § 301 is controlled by

18 federal substantive law even though it is brought in state court," the Supreme Court has deemed it proper

19 for such cases to be removed to federal court under federal question jurisdiction. *Avco Corp. v. Aero*

20 *Lodge No. 375, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968).

21 Section 301 preemption subsequently expanded "beyond cases specifically alleging contract

22 violation to those whose resolution is 'substantially dependent upon analysis of the terms of an

23 agreement made between the parties in a labor contract.'" *Cramer v. Consolidated Freightways, Inc.*,

24 255 F.3d 683, 689 (9th Cir. 2001) (en banc) (citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202

25 (1985)).  "The preemptive force of § 301 is so powerful as to displace entirely any state cause of action

'for violation of contracts between an employer and a labor organization.'" *Franchise Tax Bd. v.*

*Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). "Any such suit is purely a creature of federal

law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.*

Nevertheless, "not every dispute concerning employment, or tangentially involving a provision

of a [CBA], is preempted by § 301 or other provisions of the federal labor law." *Allis–Chalmers*, 471

U.S. at 211. In *Caterpillar, Inc. v. Williams*, the Supreme Court clarified that § 301 preemption applies

only to "claims founded directly on rights created by collective-bargaining agreements, and claims

'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. 386, 394 (1987)

(quoting *Franchise Tax Bd.*, 463 U.S. at 23). *Caterpillar* also explicitly rejected the argument that "all

employment-related matters involving unionized employees be resolved through collective bargaining

and thus be governed by a federal common law created by § 301." *Id.* at 396 (internal citations omitted).

In other words, a defendant cannot invoke § 301 preemption merely by "alleging a hypothetical

connection between the claim and the terms of the CBA or a "creative linkage between the subject

matter of the claim and the wording of a CBA provision." *Cramer*, 255 F.3d at 691-92. "[R]ather, the

proffered interpretation argument must reach a reasonable level of credibility." *Id.* at 692.

In *Burnside v. Kiewit Pacific Corp.*, the Ninth Circuit set forth a two-part test for determining

whether a claim is preempted by Section 301 based upon the Supreme Court's guidance on the issue.

491 F.3d 1053, 1060 (9th Cir.2007). First, a court must "determine whether a particular right inheres in

state law or, instead, is grounded in a CBA" by considering "the *legal* character of a claim, as

'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising

from 'precisely the same set of facts' could be pursued." *Id.* (emphasis in original) (quoting *Livadas v.*

*Bradshaw*, 512 U.S. 107, 123 (1994)). The *Burnside* panel, citing *Caterpillar*, clarified that a defense

relying on the terms in a CBA is "not enough 'inject[ ] a federal question into an action that asserts what

is plainly a state-law claim." *Id*. at 1053 (quoting 482 U.S. at 398–99) (explaining that "the plaintiff is

the master of the complaint," and that if the defendant could engineer "the forum in which the claim

shall be litigated" based on the substance of his defense, "the plaintiff would be master of nothing"); *see*

*also Cramer*, 255 F.3d at 691 (noting that the plaintiff's claim itself is the 'touchstone' for preemption

analysis). "If the right exists solely as a result of the CBA, then the claim is preempted, and [ ] analysis

ends there." *Burnside*, 491 F.3d at 1059.

Second, if the claim exists independently from the CBA, the court must still decide whether it is

"'substantially dependent' on the terms of a CBA" by determining "whether the claim can be resolved

by 'looking to' versus interpreting the CBA." *Id.* at 1060 (citing *Caterpillar*, 482 U.S. at 394 and

*Livadas*, 512 U.S. at 125). If the claim requires interpretation of the CBA, the claim is preempted; if the

claim merely requires "looking to" the CBA, it is not preempted. *Id.* Although the "'look to'/'interpret'

distinction" is often difficult to draw, *see id.* "when the meaning of the contract terms is not the subject

of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-

law litigation plainly does not require that the claim be extinguished." *Livadas*, 512 U.S. at 124-25.

"'[Section] 301 does not permit parties to waive, in a collective-bargaining agreement,

nonnegotiable state rights' conferred on individual employees." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071,

1076 (9th Cir. 2005) (quoting *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1111 (9th

Cir. 2000)). "In particular, the [Supreme Court] has sought to preserve state authority in areas involving

minimum labor standards." *Id*. "Thus, in order for complete preemption to apply, 'the need to interpret

the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law,

§ 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a

defense." *Id.* (quoting *Cramer*, 255 F.3d at 691); *see also Detabali v. St. Luke's Hosp.*, 482 F.3d 1199,

1203 (9th Cir. 2007) ("because there is no dispute over the meaning of any terms within the agreement,

resolution of the central issue—whether [defendant] discriminated against [plaintiff] in applying the

agreement—does not depend on interpretation of the collective bargaining agreement."); *Densmore v.*

*Mission Linen Supply*, 164 F. Supp. 3d 1180, 1194 (E.D. Cal. 2016) (no interpretation of a CBA

required were defendant "failed to point out any specific provisions in the CBAs that are subject to

dispute [and instead] merely list[ed] the provisions in the CBA that could be relevant to the

determination of whether the statutory exemption."); *Meza v. Pac. Bell Tel. Co.*, No.

117CV00665LJOJLT, 2017 WL 3503408, at \*6 (E.D. Cal. Aug. 16, 2017) ("mere reference to a CBA

does not automatically cast the claim as one requiring the interpretation of a CBA"); *Carter v. Savemart*

*Supermarkets, Inc.*, No. 1:13-CV-1712-AWI-GSA, 2014 WL 641016, at \*6 (E.D. Cal. Feb. 18, 2014)

(Finding state law claims not preempted by Section 301 and noting "Defendant has presented no specific

provisions of the collective bargaining agreement that would need to be consulted or would require

interpretation); *Avalos v. Foster Poultry Farms*, 801 F. Supp. 2d 959, 963 (E.D. Cal. 2011), *affirmed*

*upon motion for reconsideration by Avalos v. Foster Poultry Farms*, 798 F. Supp. 2d 1156 (E.D. Cal.

2011) (no interpretation of CBA required where plaintiff's action "rests on the 'purely factual' issue of

whether Defendant violated California law by not compensating plaintiffs for all of the time worked,

including donning and doffing, irrespective of the fact that section 7(H)(3) of the CBA concludes that

plaintiffs were paid"); *Livadas*, 512 U.S. at 124-25; *see also Vasserman v. Henry Mayo Newhall*

*Memorial Hosp.*, 65 F.Supp.3d 932, 951 (C.D. Cal. 2014) ("[A] state law claim will be preempted if it is

so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial

interpretation of those terms.") (citing *Allis–Chalmers*, 471 U.S. at 213).

      There is no dispute that aspects of Plaintiff's employment were subject to a CBA.  Doc. 9 ¶ 3,

Ex. "A."  Plaintiff argues that her claims do not complain about a breach of the CBA and are

independent of the labor contract.  Plaintiff further asserts that the factual inquiries involved in

Plaintiff's claims based in state statutes will not require the Court to interpret the CBA.  Greyhound

contends that that Plaintiff's complaint essentially challenges the return-to-work requirements imposed

on the parties by the CBA, and the Court will necessarily have to determine whether Plaintiff's refusal to

sign a release of her medical records constituted a violation of Article G-4 of the CBA.  Doc. 9, Ex. A.

Greyhound thus argues resolution of Plaintiff's claims is inextricably intertwined with interpretation of

the CBA.

As set forth below, applying the two-part *Burnside* test to each of Plaintiff's claims, the Court finds none is preempted by Section 301. Thus, there is no basis for federal question jurisdiction and remand is appropriate.

**1.      Retaliation in Violation of California Labor Code Section 246.5**

California Labor Code Section 246.5(c)(2) provides that

> [a]n employer shall not deny an employee the right to use accrued sick days, discharge, threaten to discharge, demote, suspend, or in any manner discriminate against an employee for using accrued sick days, attempting to exercise the right to use accrued sick days, filing a complaint with the department or alleging a violation of this article, cooperating in an investigation or prosecution of an alleged violation of this article, or opposing any policy or practice or act that is prohibited by this article."

Plaintiff alleges that she exercised her right to use accrued sick days, and complained to Greyhound about its attempts to deny her leave. Doc. 1, Ex. A ¶ 23. Plaintiff further alleges that Greyhound retaliated against Plaintiff for using her accrued sick days by refusing to permit her to return to work. Doc. 1, Ex. A ¶ 24.

Plaintiff's Section 246.5 claim is not preempted. *See Leaea v. United Airlines Inc.*, No. 18-CV-00749-SI, 2018 WL 3777566, at *8 (N.D. Cal. Aug. 9, 2018) (finding Section 246.5 claim not preempted by Railway Labor Act (RLA)); *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018) (noting that RLA and Section 301 preemption standards are "virtually identical") (internal quotation omitted). Applying the first *Burnside* factor, the Court finds that Plaintiff's claim arises under California law and exists independent of the CBA. Indeed, Greyhound does not appear to contend that Plaintiff's claim arises from the CBA.[2] Turning to the second *Burnside* factor, the Court finds that resolving Plaintiff's retaliation claims does not substantially depend on interpreting provisions of the CBA. Contrary to Greyhound's argument, the core of Plaintiff's claim is not "challeng[ing] [Greyhound's] return-to-work requirements imposed upon the parties by the CBA." Doc. 8 at 5.

---

[2] Greyhound does not appear to contend that any of Plaintiff's claims exist solely as a result of the CBA under the first step of the *Burnside* test. *See* Docs. 1 ¶¶ 9-16, 8 at 3-6.

1  Plaintiff's Complaint does not allege a violation of the CBA's return-to-work requirements, and

2  Plaintiff's Complaint does not plead that this claim depends on resolving a disputed interpretation of a

3  CBA provision.  Plaintiff's Complaint does not advocate for a particular interpretation of any CBA

4  provision.  Plaintiff does not allege that she was not allowed to return to work due to Greyhound's

5  interpretation of the CBA, but rather because she exercised her right to use accrued sick days.

6  Moreover, it is conceivable that Plaintiff would have a valid claim for retaliation regardless of whether

7  her refusal to turn over the relevant medical records violated the CBA, making it less likely that her

8  claim "substantially depends on" resolving a disputed interpretation.

9       The fact that the return-to-work requirements contained in Article G-4 of the CBA may be

10  relevant to this claim does not establish that resolution requires interpretation of the CBA.  The mere

11  reference to a CBA does not automatically cast the claim as one requiring the interpretation of a CBA.

12  *See Livadas*, 512 U.S. at 125.  Indeed, Greyhound "failed to point out any specific provisions in the

13  CBAs that are subject to dispute.  Rather, as stated above, [Greyhound] merely lists the provisions in the

14  CBA that could be relevant to the determination." *Densmore*, 164 F. Supp. 3d at 1194; *see also*

15  *Detabali*, 482 F.3d at 1203; *Carter*, 2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6.

16  Greyhound does not show that there are differing interpretations between the parties of the relevant

17  CBA provisions, and Greyhound does not explain how Plaintiff's claim substantially depends on which

18  differing interpretation is adopted.  At most, Greyhound is relying on the CBA provisions as a defense,

19  but reliance "on CBA provisions to defend against an independent state law claim does not trigger § 301

20  preemption." *Huitron v. U.S. Foods, Inc.*, No. CV 14-09402 MMM PLAX, 2015 WL 1524398, at *7

21  (C.D. Cal. Mar. 31, 2015) (quoting *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002)).

22       **2.       Retaliation in Violation of Labor Code Sections 6310-6311**

23       California Labor Code Section 6310(a)(1) provides that "[n]o person shall discharge or in any

24  manner discriminate against any employee because the employee . . . [m]ade any oral or written

25  complaint to . . . his or her employer."  California Labor Code Section 6311 provides that an employee

13

who is retaliated against in violation of the section "shall have a right of action for wages for the time employee is without work as a result of layoff or discharge."

Plaintiff alleges that she reported unsafe working conditions to Greyhound, including but not limited to Greyhound requiring bus operators to work too many hours in a week leading to driver fatigue. Doc. 1, Ex. A ¶ 29. Plaintiff is informed and believes that Greyhound refused to permit her to return to work in retaliation for her reports of unsafe working conditions in the workplace. Doc. 1, Ex. A ¶ 30. Plaintiff further pleads she has suffered substantial economic losses, including seeking and performing substitute employment and earnings, bonuses, deferred compensation, and other employment benefits she would have received. Doc. 1, Ex. A ¶ 31.

For similar reasons as Plaintiff's Section 246.5 retaliation claim, Section 301 preemption does not apply to this claim. "California federal courts have uniformly concluded that § 6310 is an independent statutory right such that claims asserted under it are not preempted by § 301." *See Huitron*, 2015 WL 1524398, at *7 (collecting cases); *see also Lee v. Ardagh Glass, Inc.*, No. 1:14-CV-0759-SAB, 2015 WL 251858, at *6-7 (E.D. Cal. Jan. 20, 2015) (finding Section 6311 retaliation claim independent of the CBA and not subject to Section 301 preemption). Thus, applying the first *Burnside* factor, Plaintiff's Sections 6310/6311 claim arise under California law and exist independent of the particular terms of the CBA. The CBA may provide guarantees related to grievances, but Plaintiff's retaliation claim is explicitly founded on state law.

Turning to the second *Burnside* factor, the Court again finds that resolving Plaintiff's Sections 6310/6311 claim does not substantially depend on interpreting provisions of the CBA. Plaintiff is not alleging that she was retaliated against for complaining about a violation of the CBA, but instead for reporting a violation of the California Labor Code. Plaintiff does not allege any violation of the CBA, and Plaintiff's Complaint does not plead that this claim depends on resolving a disputed interpretation of a CBA provision. Plaintiff's claims may require interpretation of the California Labor Code and state law, but it is not clear that the claim substantially depends on resolving differing interpretations of the

14

CBA.

The fact that the return-to-work requirements contained in Article G-4 of the CBA may be relevant to the determination of this claim does not establish that resolution requires interpretation of the CBA. The mere reference to a CBA does not automatically cast the claim as one requiring the interpretation of a CBA. *Livadas*, 512 U.S. at 125. Again, Greyhound "failed to point out any specific provisions in the CBAs that are subject to dispute. Rather, as stated above, [Greyhound] merely lists the provisions in the CBA that could be relevant to the determination." *Densmore*, 164 F. Supp. 3d at 1194; *see also Detabali*, 482 F.3d at 1203; *Carter*, 2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6. Greyhound does not show that there are differing interpretations between the parties of the relevant CBA provisions, and Greyhound does not explain how Plaintiff's claim substantially depends on which differing interpretation is adopted. The fact that Greyhound is relying "on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption." *Huitron*, 2015 WL 1524398, at *7 (quoting *Humble*, 305 F.3d at 1011).

**3.** **Discrimination and Harassment Based on Perceived Disability in Violation of California Government Code Section 12940**

California Government Code Section 12940 provides in pertinent part:

> It shall be an unlawful employment practice . . . (a) For an employer, because of the . . . physical disability . . . [or] medical condition of any person . . . to discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges or employment . . . . (j)(1) For an employer . . . because of physical disability . . . [or] medical condition . . . to harass an employee."

In addition, California Government Code Section 12926 states, in part: "[P]hysical disability and medical condition . . . includes a perception that the person has any of those characteristics . . . ."

Plaintiff alleges that Greyhound has not permitted Plaintiff to return to work because it perceives her as disabled and unable to perform her job duties. Doc. 1, Ex. A ¶ 35. Plaintiff further alleges that she can perform her job duties and is not disabled. *Id.* Plaintiff also alleges that Greyhound harassed Plaintiff because of perceived disability by questioning her about her reasons for taking sick leave, by

1  requiring her to be examined by a health care provider of its choosing and demanding that the health

2  care provider of its choosing obtain and review her private medical records. *Id.*

3  Plaintiff's Section 12940 discrimination and harassment claim is not preempted by Section 301.

4  *See Detabali*, 482 F.3d at 1203 (holding district court erred in finding 12940 discrimination claims

5  preempted, and collecting "long line" of cases holding 12940 claims are not "ipso facto preempted by

6  § 301."); *see also Valles v. Twentieth Century-Fox Film Corp.*, 103 F. App'x 100, 101 (9th Cir. 2004)

7  ("We have consistently held that state discrimination claims brought under [12940] are not preempted

8  by the LMRA"). Again, under the first *Burnside* factor, Plaintiff's claim explicitly arises under

9  California law and exists independent of the particular terms of the CBA. Applying the second *Burnside*

10  factor, the Court again finds that resolving Plaintiff's retaliation claims does not substantially depend on

11  interpreting provisions of the CBA. Plaintiff is not alleging harassment and discrimination based on

12  Greyhound's failure to follow the CBA, or that Greyhound misinterpreted the CBA in a way that led to

13  discrimination and harassment. Plaintiff does not allege that the cause of the harassment and

14  discrimination was a result of Greyhound's differing interpretation of the CBA.

15  The fact that the return-to-work requirements contained in Article G-4 of the CBA may be

16  relevant to the determination in this case does not establish that resolution requires interpretation of the

17  CBA. The mere reference to a CBA does not automatically cast the claim as one requiring the

18  interpretation of a CBA. *Livadas*, 512 U.S. at 125. Again, Greyhound "failed to point out any specific

19  provisions in the CBAs that are subject to dispute. Rather, as stated above, [Greyhound] merely lists the

20  provisions in the CBA that could be relevant to the determination. *Densmore*, 164 F. Supp. 3d at 1194;

21  *see also Detabali*, 482 F.3d at 1203; *Carter*, 2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6.

22  Greyhound does not show that there are differing interpretations between the parties of the relevant

23  CBA provisions, and Greyhound does not explain how Plaintiff's claim substantially depends on which

24  differing interpretation is adopted. Again, the fact that Greyhound is relying on the CBA as a defense to

25  an independent state law claim does not trigger Section 301 preemption. *See Huitron*, 2015 WL

1524398, at *7 (quoting *Humble*, 305 F.3d at 1011).

**4.      Retaliation in Violation of California Government Code Section 12940(h)**

California Government Code Section 12940(h) states in pertinent part:

"It shall be an unlawful employment practice . . . [f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

Plaintiff alleges on information and belief that Greyhound refuses to permit Plaintiff to return to work in retaliation for her complaints about discrimination and harassment in the workplace and its impermissible inquiry about her medical condition.  Doc. 1, Ex. A ¶ 41.

Plaintiff's Section 12940(h) claim is not preempted by Section 301 for the same reasons as Plaintiff's other retaliation and Section 12940 claims.  *See Detabali*, 482 F.3d at 1203; *Valles*, 103 F. App'x at 101.  Applying the first *Burnside* factor, it is again clear Plaintiff's claim explicitly is based in a California statutory right that exists independently of the particular terms of the CBA.  The CBA's references to grievance procedures may be tangentially relevant to this claim, but Plaintiff's Section 12940(h) claim is explicitly founded on state law.  And applying the second *Burnside* factor, again, resolving Plaintiff's Section 12940(h) claim will not substantially depend on interpreting provisions of the CBA for the same reasons as her Section 12940 discrimination and harassment claim.  Plaintiff does not plead that Greyhound's differing interpretation of the CBA resulted in the unlawful retaliation. While references to the CBA may be relevant or even necessary to resolving this claim, this does not establish that interpretation of the CBA will be required.  And, again, Greyhound failed to point out any specific provisions whose meaning is subject to dispute, nor does Greyhound explain how this claim substantially depends on resolving differing interpretations of the CBA.  *Densmore*, 164 F. Supp. 3d at 1194; *see also Detabali*, 482 F.3d at 1203; *Carter*, 2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6.  At most, Greyhound will utilize the CBA in its defense to an independent state law claim, which is insufficient for Section 301 preemption.  *Huitron*, 2015 WL 1524398, at *7 (quoting *Humble*, 305 F.3d

17

at 1011).

**5.      Impermissible Inquiry Regarding Medical Condition in Violation of California Government Code Sections 12940(e)(1) and (f)(1)**

California Government Code Section 12940(e)(1) provides:

> It shall be an unlawful employment practice . . . [e]xcept as provided in paragraph (2) or (3), for any employer or employment agency to require any medical or psychological examination of an applicant, to make any medical or psychological inquiry of an applicant, to make any inquiry whether an applicant has a mental disability or physical disability or medical condition, or to make any inquiry regarding the nature or severity of a physical disability, mental disability, or medical condition.

Further, California Government Code Section 12940(f)(1) provides:

> It shall be an unlawful employment practice . . . [e]xcept as provided in paragraph (2), for any employer or employment agency to require any medical or psychological examination of an employee, to make any medical or psychological inquiry of an employee, to make any inquiry whether an employee has a mental disability, physical disability, or medical condition, or to make any inquiry regarding the nature or severity of a physical disability, mental disability, or medical condition.

Plaintiff alleges that when she attempted to use her sick leave, Greyhound asked her to provide detailed information about her medical condition. Doc. 1, Ex. A ¶ 47. Plaintiff refused to do so and complained about the alleged impermissible inquiry. *Id.* Plaintiff further alleges that Greyhound refused to let her return to work after her leave in retaliation for not disclosing her private medical information. *Id.* Plaintiff alleges that this conduct violated the Fair Employment and Housing Act. *Id.*

Plaintiff's impermissible inquiry claims are not preempted by Section 301 for the same reasons as her other claims. *See Detabali*, 482 F.3d at 1203; *Valles*, 103 F. App'x at 101. Just as with the other Section 12940 claims, under the first *Burnside* factor, Plaintiff's claim arises under California law and exists independent of the particular terms of the CBA. The CBA's references to medical exams and procedures for leave may be tangentially relevant to this claim, but Plaintiff's impermissible inquiry claims are explicitly founded on state law. Regarding the second *Burnside* factor, resolving Plaintiff's impermissible inquiry claim will not substantially depend on interpreting provisions of the CBA. Plaintiff does not plead that Greyhound's interpretation of the CBA caused the impermissible inquiry.

18

The interpretation of the California Government Code will almost certainly be required, including to what extent state law permits Greyhound to inquire into an employee's medical condition. References to the CBA may be relevant or even necessary to resolving this claim, this does not establish that interpretation of the CBA will be required. But once again, it is important to note Greyhound failed to point out any genuine dispute between the parties as to the interpretation of any specific provision and how resolution of this claim substantially depends on interpreting the CBA. *Densmore*, 164 F. Supp. 3d at 1194; *see also Detabali*, 482 F.3d at 1203; *Carter*, 2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6. As with the other claims discussed above, the fact that Greyhound is relying "on CBA provisions to defend against an independent state law claim does not trigger § 301 preemption." *Huitron*, 2015 WL 1524398, at *7 (quoting *Humble*, 305 F.3d at 1011).

      **6.**       **Aiding and Abetting Retaliation in Violation of California Government Code Section 12940(I)**

California Government Code Section 12940(I) provides that "[i]t shall be an unlawful employment practice . . . [f]or any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this part, or to attempt to do so."

Plaintiff alleges on information and belief that OHCC (named in this count of the complaint as "Concentra") aided and abetted Greyhound in carrying out the alleged discrimination and retaliation by revoking Plaintiff's DOT medical certification without justification and by requiring Plaintiff to permit OHCC to obtain and review her private medical records as a condition of reinstating her DOT medical certification. Doc. 1, Ex. A ¶ 53.

Plaintiff's aiding and abetting claim is not preempted by Section 301. *See Detabali*, 482 F.3d at 1203; *Valles*, 103 F. App'x at 101. Once again, this is a claim that explicitly arises under California statute and exists independent of the CBA. The CBA may be tangentially relevant, but it does not discuss third-party aiding and abetting of unlawful acts under the Labor Code. Applying the second *Burnside* factor, resolving Plaintiff's aiding and abetting claim will not substantially depend on

interpreting provisions of the CBA.  Plaintiff does not plead that OHCC or Greyhound's

misinterpretation or violation of the CBA caused the unlawful aiding or abetting.  While references to

the CBA may be relevant to resolving this claim, this does not establish that interpretation of the CBA

will be required.  And again, Greyhound failed to point out any specific provisions whose meaning is

subject to dispute in such a way that the aiding and abetting claim substantially depends on resolving the

disputed meaning.  *Densmore*, 164 F. Supp. 3d at 1194; *see also Detabali*, 482 F.3d at 1203; *Carter*,

2014 WL 641016, at *6; *Meza*, 2017 WL 3503408, at *6.  The fact that Greyhound and OHCC may rely

"on CBA provisions to defend against an independent state law claim does not trigger § 301

preemption." *Huitron*, 2015 WL 1524398, at *7 (quoting *Humble*, 305 F.3d at 1011).

Therefore, the Court has determined that Section 301 does not preempt any of the causes of

action in Plaintiff's Complaint, as all arise independently from state law and do not require interpretation

of the CBAs for resolution.  *Burnside*, 491 F.3d at 1074.  Accordingly, Greyhound cannot meet its

burden of establishing federal question jurisdiction under 28 U.S.C. § 1331.  *See Moore*, 553 F.3d at

1244 ("The removal statute is strictly construed, and any doubt about the right of removal requires

resolution in favor of remand"); *Gaus*, 980 F.2d at 566.  Because this Court lacks subject matter

jurisdiction over the instant case, remand is warranted.  28 U.S.C. § 1447(c).

## V. CONCLUSION AND ORDER

For the reasons stated above, Plaintiff's motion to remand is GRANTED.


IT IS SO ORDERED.

Dated:   **December 13, 2018**          **/s/ Lawrence J. O'Neill**
                                                UNITED STATES CHIEF DISTRICT JUDGE